Curia, per
Johnson, J.
The Court concur in the opinion expressed by the presiding Judge, as to the liability of the defendant, and will take occasion, hereafter, to express the reasons on which that concurrence is founded.
.Tan. 1827.
The order directing that Brown's bond should be delivered to the Commissioner, or that the money received by defendant should be paid to him, does not and could not imP°se on ^le complainant any imperative obligation to comply with the terms on which it is to be transferred to him. Inconvenience and probable loss might arise to the defendant, if the complainant should refuse or neglect to do so, and no possible injury can result to complainant from a modification of the decree so as to require that the indemnity contemplated should precede the deliyeVy of the bond or the payment of the money. It is' therefore ordered and decreed that on the complainant’s securing the defendant, to the satisfaction of the Commissioner, against his liability on the warranty title executed by Carloss to Brown, and on his liability on his contract with Carloss, that the defendant shall forthwith deliver to the Commissioner Brown’s bond for $900, and pay over to him what money he may have recovered thereon, if any; or that he shall pay the amount of the said bond to the Commissioner, to be by him delivered and paid over to the complainant.
Mr Justice Johnson afterwards, delivered more at large the following opinion of the Court.
' . On a former occasion this Court expressed its concurrence in the judgment pronounced, in this case, by the Circuit Court; but not entering fiilly into all the reason-ings on which that judgment is founded, it has devolved on me to express those on which the concurrence of this Court proceeds. The authorities which have been put in requisition have left a gleaning so scanty and barren, that the labour of collecting them would not be. compensated by any lights they might throw on the subject; and have been so ably and fully digested, that nothing is left to this Court, but to extract from them the true principle, and to apply it to the case under consideration.
The law will not permit an attorney to avail himself.of the circumstances arising .out of that relation, to make a contract, relative to the property in litigation, to the disadvantage of his client.
Every contract between persons holding such relation is not necessarily Void.
The law looks with jealousy upon such contracts, on ac-pount of the influence of the attorney overhis dient. He must has not used judice'ofh*is" client,and was as well the "subject himself, and fun^nd M¡ea price.
*547 The policy of the law is clearly opposed to contracts between client and attorney in relation to property in litigation, and of which the latter has the charge, I think on the soundest reasoning. The value of property we know depends almost exclusively on the certainty of the title; and from the nature of his profession the attorney is supposed to be more competent to judge of it than the client. To discharge the duties which that relation imposes his client must commit to him all the information he possesses on the subject. That relationship too begets the most unlimited confidence, for without it the client’s rights are endangered; and to permit the attorney to use those means to the prejudice of the client would.be to subject him to what is aptly enough termed a crushing influence.
The true rule then I take to be this, that the law will not permit an .attorney to avail himself of the circumstances arising out of that relation to make a contract relative to the property in litigation to the disadvantage of his client. But I do not think that it necessarily follows, that every contract between persons standing in this relation, and about such a subject matter, is absolutely void; nor do I think that such a conclusion is sustained by the current of decisions. Neither of the parties is supposed to be subject to any of those legal personal disabilities, which incapacitate them from contracting, and prima facie they would be bound by their contract; and when a rule of law is interposed to avoid, or to enforce its fulfilment if it is executory, on the maxim, cessante ratione cessat ipsa lex, we are led to inquire whether the case is within the reason of the rule.
In this inquiry, the jealousy with which the law views such a contract is ready to lend its aid in support of perhaps trivial circumstances tending to bring the case within the rule. But the danger to which the client is exposed, from the supposed influence which his attorney *548 has over him, is the reason on which it proceeds-; and the inquiry is, whether he has or has not used it to his prejudice; and if it should appear that the client was as well, 01 better, advised than his attorney on all matters connected with the contract — which, without disparagement to the profession, does frequently happen — and has received a full and adequate price, where, 1 would ask, is ^le hardship or injustice of sustaining such a contract, ^although one of the parties 'should capriciously ask to be absolved from it % Surely there is none: and the rule asneve1' could have been intended to operate on such a case.
This view of the subject is, I think, fully sustained by the reasoning of Lord Redesdale in Cane v. Lord Mien, when in sustaining the judgment of the Court he remarks, that Cane, the attorney, took no advantage of the confidence placed in him by Lord Allen, or of any superior knowledge of the value of the estate, which he acquired as agent. And also by that of Lord Eldon, who in the same case remarks, that it would be incumbent on the attorney to shew, that he had given the same disinterested advice that he would have done if the contract had been made with another -party. In Harris v. Freemenheere, 15 Ves. 42, it is said that an attorney may purchase from his client; but to support such a purchase he must be able to prove, that he paid the full amount that could have been obtained from any other person.
With respect to the cases on which the opinion of the Chancellor appears to have been founded, it may be remarked, that although from the generality of expressions it is to be inferred that the isolated circumstance of the contract being between client and attorney was sufficient to avoid it, yet it will be seen upon an examination of the cases in which relief has been given, that some circumstances entered into them demonstrating the influence which the relationship between the parties had over the *549 contract, furnished either by some positive act of fraud, or deducible from its inequality. I conclude, therefore, that all contracts between attorney and client, in relation to the property in litigation, are not necessarily void on the ground of that relationship; but that to render it so it must appear that it was used to the prejudice of the client. As a matter of proof, it is impossible to lay down any rule as to what will, or will not, constitute sufficient evidence of it. It may consist in all the variety which exists between the most glaring and dishonest frauds, or be deduced from circumstances found in the twilight which separates them from perfect fairness,, aided by the suspicion with which such contracts are regarded. These observations are not deemed necessary to the case under consideration, but. were rendered so by a shade of difference, between the opinion of the Chancellor who tried the cause, and the views taken by this Court, and to fix a principle which is involved in some difficulty.
The features of this case are, if .the evidence is to be credited, too strongly marked to admit of any doubt in the application of the principle. ,The defendant did, it would appear, whilst his client was ignorant of the result of a cause in which the property was in litigation, participate in a contract, by which the client parted with it at an inadequate price, and however disinterested his intentions might have been in a moral point of view, as a legal deduction it must be presumed that there was some cause operating on his mind; and in the absence of any other it will be referred to that which was intended to be guarded against by the rule, and this itself would be decisive of the case. But if the witness Carloss is to be believed, there are other circumstances which ought to weigh. For although he does not state that the defendant yielded to it, he does say, that, he suffered his ear to be polluted with the degrading proposition to throw cold water on his client’s hopes.
*550 The decretal order entered at the last Court has not been carried into execution; and the possibility that the plaintiff may not think proper to give the security, re-quAed as a condition precedent, has suggested the propriety, of providing for that' contingency; nor is the amount secured by defendant on account of the sale , to Brown, either in cash or on bond, precisely ascertained by the decree.
The defendant has also advanced a sum of money on account of his contract with Carloss; and the complainant is indebted to him a bale of cotton by contract, as a fee for attending to the case against Harper in the Constitutional Court, which on every principle of equity and reciprocity he is entitled to have refunded and paid. But' the propriety of allowing him a compensation for any services he may render as an attorney in any future case that may involve the title to the land, is not seen, and is disallowed.
It is therefore ordered and decreed, that the Commissioner do state an account between the parties, debiting the defendant with the amount he may have received on the contract for the sale of the land to Brown, and what may remain dup on Brown’s bond, with interest from the time it became due, and credit him with the amount paid on his contract made with Carloss and the value of the bale of cotton; and that if the complainant shall, within one year after notice of the account so to be stated, enter into bond with sufficient security to be approved by the Commissioner, to indemnify and save the defendant harmless on account of his liability on his contract with Carloss to share any liability to which Car-loss may. be subject on his warranty on the sale to Brown, that then the defendant pay to the complainant the balance that may appear due on the account so to be stated, either in cash or by the delivery of. Brown’s bond *551 for the purchase money, if any thing be still due and owing thereon. But if the complainant shall fail to give such security within the time aforesaid, then the bill to stand dismissed.

Decree affirmed.